870 P.2d 1337

STATE of Idaho, Plaintiff–Respondent,

v.

Wayne Gardner LAFFERTY, Defendant–Appellant.

No. 20375.

Court of Appeals of Idaho.

Feb. 17, 1994.

William J. Litster, Boise, argued, for appellant.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent. Myrna A.I. Stahman, argued.

WALTERS, Chief Judge.

Wayne Lafferty appeals from an order revoking his probation and reinstating his sen-

tence of imprisonment. The central issue on appeal is whether the district court properly revoked probation where the record lacked sufficient evidence to show that Lafferty's violation was willful. For the reasons explained below, we affirm.

### Facts

Lafferty pled guilty in the Gooding County district court to driving while under the influence of alcohol, his third such offense in five years. I.C. §§ 18–8004, 18–8005(3). At sentencing, the court imposed a unified term of five years, with a minimum period of three years in confinement. I.C. § 19–2513. The court found that Lafferty, a fifty-six-year-old disabled veteran, was an alcoholic whose history and poor attitude offered little hope for alcohol rehabilitation. However, the court determined that it still could accomplish its goal of protecting the traveling public—its primary objective in sentencing Lafferty—by depriving Lafferty of the opportunity to drive. The court decided to suspend the sentence and place Lafferty on probation with the special conditions that he reside at a halfway house in Darlington, Idaho, at his own expense, that he take part in the in-house alcohol treatment programs it offered, and that he not drive for five years.

Two months later, the prosecutor filed a motion to revoke probation. The motion was based on a report that Lafferty had been asked to leave the Darlington house due to his disruptive behavior and his failure to pay housing costs. After an evidentiary hearing, which encompassed both the motion to revoke probation and a request by Lafferty for modification of his sentence under I.C.R. 35, the court found the state had not proved the alleged violation. The court then modified the housing requirement to allow Lafferty thirty days to find another halfway house adequate to meet the court's primary objective of protecting society from Lafferty's dangerous driving.

The Salvation Army's Adult Rehabilitation Program in Boise subsequently accepted Lafferty. He arrived there on a Wednesday and on Thursday morning, went to work in the carpentry unit. Lafferty, who was certified as one-hundred percent disabled, complained of severe pain the next morning and refused to return to work. His counselor, believing Lafferty had been assigned the light duty of hanging hangers and clothes, told Lafferty he could not stay because he would not work. That same day, Friday, Lafferty called his attorney's office and left a message that he was being terminated from the program and would have to leave. Lafferty, however, made no attempt to contact his probation officer directly on Friday, or during the intervening weekend. When no one arrived to pick him up by Monday morning,[1] Lafferty again telephoned his attorney's office, this time leaving a message requesting that his probation officer be contacted and informed of the situation.

On Tuesday morning, Salvation Army personnel told Lafferty to pack his belongings and then drove him to the Rescue Mission in Boise. From the Rescue Mission, Lafferty obtained a ride to the Veteran's Administration Hospital, also in Boise. While waiting to see his doctor, Lafferty attempted to make a collect, long-distance telephone call to his probation officer in Twin Falls. However, the office refused to accept the charges. Lafferty then dialed a local number belonging to the federal probation office. He spoke to a woman who said she understood his problem, and Lafferty ended the conversation believing that his probation officer was going to be notified. Lafferty saw his doctor that afternoon and was admitted to the hospital for a bladder infection. He spent the night in the hospital and was released the following day, Wednesday. When no one else had come to pick him up at the hospital by 5:00 o'clock that evening, Lafferty asked a friend who was visiting to take him to Lafferty's house in Wendell, Idaho. When Lafferty arrived in Wendell later that evening, however, the renters occupying his house called the sheriff, who in turn contacted Lafferty's pro-

---

1. The record shows that when Lafferty previously was asked to leave the halfway house at Darling-ton, the Gooding County Sheriff picked him up and took him back to the Gooding County Jail.

bation officer. The sheriff's deputies picked up Lafferty that night and took him to the county jail. The following day, the probation officer filed a report alleging that Lafferty had failed to comply with paragraph 2 of the probation order, which required that Lafferty "not change residence without obtaining written permission from [his] probation officer."

Based on the probation violation report, the prosecutor filed another motion seeking to revoke Lafferty's probation. After an evidentiary hearing, the court found that Lafferty had in fact violated the court's probation order by leaving the Salvation Army without authorization from his probation officer. The court then continued the proceeding for thirty days to allow Lafferty to find a suitable alternative to imprisonment that would meet the court's concern for the public safety. At the subsequent dispositional hearing, Lafferty's attorney described to the court a three-month program at a facility in the Salt Lake City, Utah, area. The court found this alternative unacceptable. The court then revoked probation and ordered into execution Lafferty's original sentence of three to five years' confinement.

On appeal, Lafferty contends that the district court erred by revoking his probation. Specifically, he argues his change of residence was not a "willful violation" of the court's probation order and, therefore, the court's decision to revoke probation was contrary to his right to the fundamental fairness required by the due process clauses of the state and federal constitutions.

As explained below, we agree that the record is insufficient to show a willful probation violation. However, we conclude that the court properly exercised its discretion in deciding to revoke probation, where it first considered whether there existed alternatives to imprisonment that would adequately meet the state's objectives in sentencing Lafferty.

## Analysis

We start with the premise that a probationer has a constitutionally-protected liberty interest in continuing his or her probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *State v. Chapman*, 111 Idaho 149, 721 P.2d 1248 (1986). Consistent with the principles of due process, a court may revoke probation only upon evidence that the probationer has in fact violated the terms or conditions of probation. *Douglas v. Burder*, 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973). Moreover, revocation must be based upon charges sufficiently specific to inform the probationer of the probation condition or conditions alleged to have been violated. *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604; *State v. Edelblute*, 91 Idaho 469, 424 P.2d 739 (1967). A court's finding that an alleged violation has been proved will be upheld on appeal if there is substantial evidence in the record to support the finding. *State v. Kelsey*, 115 Idaho 311, 766 P.2d 781 (1988); *State v. Hayes*, 99 Idaho 713, 587 P.2d 1248 (1978); *State v. Barton*, 119 Idaho 114, 803 P.2d 1020 (Ct.App.1991).

Once the court properly finds that the probationer has in fact violated probation, it then must determine, in the exercise of its discretion, whether to revoke probation and order a sentence of imprisonment, or to continue probation. *State v. Knowlton*, 123 Idaho 916, 854 P.2d 259 (1993); *State v. Marks*, 116 Idaho 976, 783 P.2d 315 (Ct.App. 1989). The decision to revoke probation will not be overturned on appeal absent a showing that the court abused its discretion. *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (1989); *State v. Hass*, 114 Idaho 554, 758 P.2d 713 (Ct.App.1988). In determining whether such an abuse occurred, the appellate inquiry centers on whether the sentencing court acted within the boundaries of its discretion, consistent with any legal standards applicable to specific choices, and whether the court reached its decision by an exercise of reason. *Hass*, 114 Idaho at 558, 758 P.2d at 717.

**A. Did the court properly find that Lafferty had violated a condition of his probation?**

In this case, the state's motion to revoke probation sufficiently charged that

Lafferty had violated probation by changing his residence without authorization from his probation officer.[2] The undisputed evidence in the record establishes that Lafferty moved out of the Salvation Army without consulting his probation officer. We conclude that this evidence is sufficient to support the court's finding that Lafferty violated the probation order. We will not disturb that finding on appeal.

## B. Did the court abuse its discretion in revoking Lafferty's probation?

We next consider whether the district court abused its discretion by revoking Lafferty's probation. Lafferty contends that the district court acted contrary to the constitutional guarantee of due process, and hence in excess of its discretionary authority, when it revoked probation for a violation that was not shown to be "willful." Because the court exceeded its discretionary authority, Lafferty continues, its decision to revoke probation must be reversed, and the order requiring that he be imprisoned must be vacated.

Unless the state shows that the violation was "willful," it is fundamentally unfair for the court to revoke probation without first considering whether adequate alternative methods of punishing the defendant are available. *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). Only if the court determines that alternatives to imprisonment are not adequate in a particular situation to meet the state's legitimate interest in punishment may the court imprison a probationer who has made sufficient,

bona fide efforts to obey the terms of the probation order. *Id.*, 461 U.S. at 673, 103 S.Ct. at 2073; *see also State v. Oyler*, 92 Idaho 43, 436 P.2d 709 (1968).[3]

We return to the facts of the case. The uncontroverted evidence presented at the probation hearing shows that Lafferty was involuntarily terminated from the Salvation Army program, and that the only reason for the termination was his inability to perform the work assigned. Lafferty was told to leave on Friday. He and his belongings were physically removed from the premises early the next Tuesday morning, and he was arrested and jailed on Wednesday. We agree that this record is insufficient to show that Lafferty "willfully" left his residence at the Salvation Army. Notwithstanding the lack of willfulness on Lafferty's part in this respect, however, his failure to further comply with the probation conditions which necessitated informing his probation officer of the situation and of his whereabouts in order to accomplish a change of residence with the consent of his probation officer nonetheless may warrant revocation if the district court considers the alternatives to imprisonment and determines that they are not adequate to meet the state's legitimate sentencing objectives. *See Bearden*, 461 U.S. at 672, 103 S.Ct. at 2072; *Oyler*, 92 Idaho at 47, 436 P.2d at 714 (1968).

The record reflects that Lafferty's residence at the Salvation Army was a fundamental condition of his probation, and that a change from this residence could undermine the court's core concern that Lafferty be prevented from driving. After finding the

**2.** The district court additionally found Lafferty in violation of the probation condition requiring that he comply with all rules of the Salvation Army. However, because the state did not charge Lafferty with violating this condition, proof of its breach cannot serve solely as the basis for revoking probation. *See Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *State v. Edelblute*, 91 Idaho 469, 424 P.2d 739 (1976). Nonetheless, once a probation violation is properly shown, the trial court can consider other incidents of probation violation which have not been formally charged in determining whether to revoke or continue the

probation. *State v. Tucker*, 103 Idaho 885, 655 P.2d 92 (Ct.App.1982); *State v. Bell*, 103 Idaho 255, 646 P.2d 1026 (Ct.App.1982).

**3.** In *Oyler*, the Idaho Supreme Court held that where the sentencing court finds it impossible for a particular probationer to perform a fundamental condition of probation, and that the probationer's inability to perform the condition renders him an unfit subject for probation, the court may revoke probation and order a sentence of imprisonment. 92 Idaho at 47, 436 P.2d at 713.

probation violation, the district court for the second time allowed Lafferty thirty days to find another halfway house, or any other facility sufficiently secure to meet its concern for the safety of the traveling public. The court emphasized that a treatment program, alone, would not meet this objective, but that Lafferty must be housed at a supervised facility. The only alternative housing suggested and described by Lafferty's attorney at the final hearing consisted of a two-month inpatient treatment program at a facility near Salt Lake City, followed by one month of essentially unsupervised employment-related activities. The court rejected the suggested program, concluding that it failed to meet the court's concern for protecting the public.[4] The court then revoked probation and ordered Lafferty to serve his original sentence of three to five years' imprisonment.

Upon this record, we conclude that the district court acted within the boundaries of its discretion and consistent with the applicable legal standards, and that its decision to revoke probation was reasonable under the circumstances. Finding no abuse of discretion, we uphold the district court's decision to revoke Lafferty's probation.

### Conclusion

The district court's final order, entered upon revocation of probation, requiring that Lafferty serve his previously imposed sentence is affirmed.

LANSING and PERRY, JJ., concur.

---

4. Lafferty argues that his attorney's failure to locate a more suitable alternative facility constituted ineffective assistance of counsel, in violation of his constitutional rights. However, this assertion was not raised below so as to preserve the claim as an issue in the record on appeal.